IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

T.W., By Next Friend K.J.,
      Plaintiff,

-vs-

LEANDER INDEPENDENT SCHOOL
DISTRICT,
      Defendant.

CAUSE NO.:
AU-17-CA-00627-SS

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff T.W.'s Motion for Judgment on the Record [#51], Defendant Leander Independent School District (LISD)'s Corrected Motion for Judgment on the Administrative Record [#62], T.W.'s Response [#68], LISD's Reply [#73], and T.W.'s Surreply [#74-1].[1] Having reviewed the documents, the governing law, and the file as a whole, the Court now issues the following opinion and orders.

**Background**

This is a special education case brought under the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act (ADA). In 2011, T.W., a student with dyslexia, enrolled in eighth grade in LISD. Administrative Record (AR) at 194. Shortly after enrollment, LISD concluded T.W. was entitled to receive accommodations under § 504 on account of his dyslexia. AR at 552; Compl. [#1-1] Ex. 1 (SEHO Decision) at 3. LISD developed an individualized plan to provide these accommodations and enrolled T.W. in its dyslexia program. AR at 555; Pl.'s Mot. J. Admin. R.

---

[1] The Court GRANTS T.W.'s Motion for Leave to File Surreply [#74].

1

[#51] at 12 (citing AR at 364). After T.W. completed the dyslexia program, LISD placed T.W. on "monitor" status. *Id.*; *see also* SEHO Decision at 3.

Between 2012 and 2015, T.W. advanced from grade to grade and achieved passing scores in all his classes, with an overall high school GPA of 3.45. AR at 473. During the same time period, he achieved satisfactory scores on the State of Texas Assessments of Academic Readiness (STAAR) test in eleven of twelve instances and met all local testing benchmarks except one, the 2015 U.S. History Spring Benchmark.[2] AR at 475.

In part, T.W.'s performance in school was bolstered by support he received from his parent, his teachers, and his coaches. T.W.'s coaches were particularly attentive to his performance in school, because T.W. was a star athlete on the football team, and when T.W. struggled in a particular class, they would provide support and ensure T.W. received sufficient study time. SEHO Decision at 5. T.W. also received various accommodations from his teachers, most of which were also available to other students. SEHO Decision at 5–6. Despite this assistance, T.W. experienced significant stress in connection with his school work, and at some point developed "anxiety, distress, poor sleep, and irritable bowel syndrome (IBS)." SEHO Decision at 3. On at least one occasion, T.W. advised a counselor that he wanted to drop out of high school and join the military. *Id.*

In February 2016, during T.W.'s last semester of high school, T.W. and his mother requested the school evaluate T.W. to determine whether he qualified for special education services. SEHO Decision at 4. In response, LISD's Educational Diagnostician reviewed T.W.'s academic record and standardized test scores and denied the request on the ground there was insufficient evidence to suggest T.W. needed specialized instruction. SEHO Decision at 6. Aside

---

[2] Despite his failure to meet this benchmark, T.W. received an "advanced" rating on the U.S. History portion of the STAAR test administered later that spring. AR at 7.

2

from this cursory review, T.W. has never received a full evaluation to determine whether he qualifies for special education and related services under the IDEA.

In April 2016, T.W. requested a due process hearing in connection with the denial of his request for an evaluation. SEHO Decision at 2–3. T.W. alleged that LISD (1) unreasonably denied his request for an evaluation; (2) erred in finding him ineligible for special education; (3) took inadequate measures to identify him as a student in need of special education on account of a disability; and (4) failed to develop an appropriate plan to address his unique needs. SEHO Decision at 1–2.

Meanwhile, in spite of LISD's alleged failures, T.W. graduated from high school in 2016 and received an academic scholarship to attend Howard Payne University. AR at 1937–38, 1965. T.W. avers this scholarship was not awarded for his academic prowess but was instead an attempt by Howard Payne University to circumvent NCAA rules prohibiting athletic scholarships for Division III athletes. *Id.*

In January 2017, after T.W. had already graduated from high school, a Special Education Hearing Officer (SEHO) conducted a full two-day hearing on T.W.'s due process claims. SEHO Decision at 3. Following the hearing, the SEHO denied all of T.W.'s claims on the ground T.W. had not demonstrated a need for special education. SEHO Decision at 18.

On June 26, 2017, T.W. filed this lawsuit requesting the Court overturn the SEHO Decision denying T.W.'s IDEA claims. T.W. also asserts claims under Section 504 of the Rehabilitation Act of 1973 and the ADA, neither of which were before the SEHO. Compl. [#1] at 4–5. Both parties now move for summary judgment. Pl.'s Mot. J. Admin. R. [#51]; Def.'s Mot. J. Admin. R. [#62]. These pending motions are ripe for review.

## Analysis

I.  **Legal Standard**

   A.  **Summary Judgment—IDEA Claims**

Under the IDEA, any party aggrieved by an SEHO's findings and decision may bring suit in federal district court. 20 U.S.C. § 1415(i)(2)(A). A federal district court's review of an SEHO decision on IDEA claims is "virtually de novo." *Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003). Thus, while "the hearing officer's findings should be accorded due weight, . . . the district court must arrive at an independent conclusion based on a preponderance of the evidence," and the existence of a disputed material fact will not defeat a motion for judgment on an IDEA claim. *Id.*; 20 U.S.C. § 1415(i)(2)(C)(iii). Finally, in an appeal from the decision of an SEHO, the appellant bears the burden of persuasion. *Seth B. ex rel. Donald B. v. Orleans Parish Sch. Bd.*, 810 F.3d 961, 972 (5th Cir. 2016).

   B.  **Summary Judgment—Section 504 Claims and ADA Claims**

In addition to his IDEA claims, T.W. asserts claims under § 504 and the ADA which were not considered by the SEHO.[3] Compl. [#1] at 35–37; SEHO Decision at 2. These claims are reviewed under the classic Rule 56(a) summary judgment standard.

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty*

---

[3] The SEHO concluded he lacked jurisdiction to consider claims arising under laws other than the IDEA. SEHO Decision at 2.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing

sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

The Court first considers whether the SEHO erred in denying T.W.'s IDEA claims. It then turns to consider T.W.'s § 504 and ADA claims.

### A. IDEA Claims

Because Texas receives federal education funding, all school districts within the state must comply with the IDEA. *See Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. ex rel. Barry F.*, 118 F.3d 245, 247 (5th Cir. 1997). The IDEA requires states receiving federal education funding to provide a free appropriate public education (FAPE) to all eligible children. 20 U.S.C. § 1412(a)(1). A FAPE may include both special education and related services if a child qualifies as a "child with a disability" under the IDEA.[4] *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE–1*, 137 S. Ct. 988, 994 (2017). In turn, a child qualifies as a "child with a disability" if the child has an intellectual disability, specific learning disability, or other health impairment and, "by reason thereof, needs special education and related services." 34 C.F.R. § 300.8(a)(1). To facilitate the identification of children in need of special education, the IDEA imposes a "child find" requirement on states. 20 U.S.C. § 1412(a)(3)(A). This requirement dictates that states must identify, locate, and evaluate "[a]ll children with disabilities . . . who are in need of special education and related services[.]" *Id.*

Either the school district or the parent of the child may request an evaluation to determine if the child qualifies as a "child with a disability" under the IDEA. 20 U.S.C. § 1414 (a)(1)(B). If

---

[4] Special education is "specifically designed instruction . . . to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(9). Related services are the support services "required to assist a child . . . to benefit from [special education]." *Id.* § 1401(26), (29); *see also* 34 C.F.R. § 300.34 (defining related services); *id.* § 300.39 (defining special education).

6

the evaluation determines the child qualifies as a "child with a disability," the school district is required to convene a committee—composed of a school district representative, a teacher, the child's parents or guardians, and, when appropriate, the child himself—to develop an individualized education plan (IEP) for the child. *El Paso Indep. Sch. Dist. v. Richard R. ex rel. R.R.*, 567 F. Supp. 2d 918, 925 (W.D. Tex. 2008) (citing 20 U.S.C. § 1414(d)(1)(B)); *see generally* 20 U.S.C. § 1414 (explaining role of IEP committee). In Texas, the committee which develops the IEP is referred to as the Admission, Review, and Dismissal Committee (ARDC). 19 TEX. ADMIN. CODE § 89.1050.

The IDEA "does not penalize school districts for not timely evaluating students who do not need special education." *D.G. ex rel. B.G. v. Flour Bluff Indep. Sch. Dist.*, 481 F. App'x 887, 891–93 (5th Cir. 2012) (per curiam); *see also Keller*, 328 F.3d at 812 ("[P]rocedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity[.]"). Similarly, if a student does not need special education and does not qualify as a child with a disability under the IDEA, a school district does not violate the IDEA if it declines to provide special education to which the student is not entitled. *Keller*, 328 F.3d at 812.

Here, T.W.'s claims turn on whether or not T.W. needed special education. If he does need special education, he qualifies as a child with a disability under the IDEA, and LISD may have erred in denying him special education. Conversely, if, as the SEHO determined, T.W. does not need special education, then he does not qualify as a child with a disability under the IDEA, and LISD did not err in refusing to provide such education. Additionally, if T.W. does not need special education, T.W. may not recover on his claim that LISD erred in failing to timely

7

evaluate T.W. to determine his eligibility for such education under the IDEA. *Flour Bluff*, 481 F. App'x at 891–93.

As a preliminary matter, T.W. contends the SEHO erred in ruling on T.W.'s eligibility for special education because (1) "This matter was not before" the SEHO; (2) The determination of whether a student needs special education is "not appropriate" for an SEHO; and (3) Even if the determination was appropriate for the SEHO, the SEHO nevertheless lacked "assessment tools or evaluations" necessary to determine whether T.W. needed special education because LISD never convened a committee to consider whether T.W. needed such education. Pl.'s Mot. J. Admin. R. [#51] at 3, 19–22. The Court considers each of these arguments in turn.

To start, T.W.'s eligibility for special education *was* before the SEHO. Indeed, all of T.W.'s claims turn on whether or not T.W. was eligible for special education, and it is unclear why T.W. believes the SEHO acted improperly by reaching the issue of T.W.'s eligibility for services. *See* Pl.'s Mot. J. Admin. R. [#51] at 3 (offering no explanation as to why T.W.'s eligibility was "not before" the SEHO).

Next, and relatedly, T.W. argues the determination of whether a student needs special education is "not appropriate" for an SEHO because "only an [ARDC] could make a determination that a student is eligible for special education." Pl.'s Mot. J. Admin. R. [#51] at 19–22. But T.W. cites no statute or regulation prohibiting SEHOs from determining whether a student needs special education, and while T.W. does cite two cases in support, neither provides a pertinent holding. *See T.B. v. Bryan Indep. Sch. Dist.*, 628 F.3d 240, 245 (5th Cir. 2010) (holding attorney's fees are only available in IDEA proceedings if the child is a "child with a disability"); *D.S. v. Neptune Twp. Bd. of Educ.*, 264 F. App'x 186, 187 (3d Cir. 2008) (holding attorney's fees unavailable because child had not been determined to be a "child with a

8

disability" under the IDEA). At any rate, SEHOs frequently decide whether children need special education without any objection from reviewing courts. *See, e.g., Flour Bluff*, 481 F. App'x at 889 ("[T]he special-education hearing officer . . . [concluded] that [the student] had failed to prove he was eligible for special education under the IDEA."). Given T.W.'s failure to point to any binding legal authority holding this exercise of SEHO authority is improper, the Court concludes T.W. has failed to carry the burden of persuasion on this argument.

T.W.'s final complaint is that, even if the SEHO can determine whether a student needs special education, the SEHO should not have done so here without first requiring LISD to convene an ARDC meeting to consider T.W.'s eligibility. Pl.'s Mot. J. Admin. R. [#51] at 19–22. In this vein, T.W. suggests the SEHO "did not have the necessary information to make the determination" of whether T.W. is eligible to receive special education under the IDEA. *Id.* at 19–20. This is ludicrous. Before reaching his determination, the SEHO had the benefit of a multiday evidentiary hearing during which the parties submitted forty exhibits and called thirteen witnesses. Def.'s Mot. J. Admin. R. [#62] at 29. The resulting administrative record is 2,226 pages. AR at 2226. In this context, if the SEHO lacked necessary information, it is because T.W. failed to present that evidence during the evidentiary hearing.

To summarize, T.W. has pointed to no legal authority suggesting an ARDC meeting must occur before an SEHO can render a determination on eligibility for special education, nor has T.W. explained how the failure to convene an ARDC meeting impeded T.W.'s ability to present evidence on his eligibility for special education during the hearing before the SEHO. The Court therefore concludes T.W. has failed to carry the burden of persuasion on this argument.

Having concluded the SEHO properly considered the issue of T.W.'s eligibility for special education, the Court now considers whether the SEHO correctly determined T.W. was

ineligible. T.W. argues the SEHO erred by ignoring T.W.'s "academic problems and behavior relating to school work." Pl.'s Mot. J. Admin. R. [#51] at 22. Specifically, T.W. argues he experienced difficulty completing homework assignments, lacked attention and focus, and was often stressed by school. *Id.* at 22. He further alleges he received "highly individualized" one-on-one tutoring from coaches, teachers, and his mother and suggests this attention demonstrates he needed special education and related services through the IDEA. *Id.* at 23. Finally, T.W. contends that "low test grades were dropped to increase his grades," that "answers to tests were corrected before being graded," and that other students did not receive these individualized accommodations. *Id.* at 22–24.

In fact, the SEHO considered all of these things. *See* SEHO Decision at 3, 5–6, 15–18. Nevertheless, the SEHO concluded T.W. had not demonstrated a need for special education. *Id.* at 15. Specifically, the SEHO reasoned that T.W. had passed all his classes, graduated, was admitted to college and had performed satisfactorily on nearly all state assessments and benchmark tests. *Id.* at 15. The SEHO also noted that T.W. demonstrated strong "behavioral progress" and "acquisition of appropriate social skills." *Id.* at 16. And contrary to T.W.'s assertions here, the SEHO concluded the accommodations offered to T.W. were not highly individualized, but rather, were available to other students as needed. *Id.* at 5–6, 17 ("[T.W. received] the same access to the benefits of public education as other students[] . . . primarily through accommodations that were mostly available to other high school students in general education[,] . . . includ[ing] turning in assignments late, extra time, [and] make-up for homework and tests . . . ."). Finally, the SEHO concluded the support T.W. received from his teachers, coaches, and mother did not necessarily demonstrate a need for special education. *Id.* at 16–17.

Upon consideration of the SEHO Decision, the administrative record on which it relies, and the arguments made by T.W. here, the Court concludes T.W. has not demonstrated he needed special education while he was a student in LISD. Further, because T.W. has not demonstrated he needed special education, he has failed to show he qualifies as a "child with a disability" entitled to special education under the IDEA. Finally, insofar as T.W. is not entitled to special education under the IDEA, T.W.'s IDEA claims fail and LISD is entitled to summary judgment on those claims. *Keller, 328 F.3d at 812.*

**B.     Section 504 and ADA Claims**

In addition to his IDEA claims, T.W. also asserts claims under § 504 and the ADA. "The primary difference between the ADA and § 504 is that § 504 applies only to recipients of federal funds." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 291 (5th Cir. 2005). LISD does not dispute that it receives federal funds, and thus, the ADA and § 504 impose "identical obligations" here. *Id.* at 288 n.76, 291; *see also Hainze v. Richards*, 207 F.3d 795, 799 (5th Circuit 2000) ("Jurisprudence interpreting either [§ 504 or Title II of the ADA] is applicable to both.").

Section 504 and the ADA "broadly prohibit discrimination against disabled persons in federally assisted programs or activities." *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453–54 (5th Cir. 2010). Plaintiffs seeking to state a cause of action under § 504 must show intentional discrimination against a student on the basis of his disability. *Id.* at 454; *see also Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008) ("[P]laintiffs must prove a *mens rea* of 'intentional discrimination[]' to prevail on a § 504 claim[.]"). In the Fifth Circuit, plaintiffs can show intentional discrimination by pointing to facts "creating an inference of

11

professional bad faith or gross misjudgment." *D.A.*, 629 F.3d at 454–55. T.W. argues LISD discriminated against T.W. in two ways.

First, T.W. argues LISD "never conducted an evaluation that meets the § 504 requirements" and failed to "periodically" reevaluate T.W.'s status under § 504. Pl.'s Mot. J. Admin. R. [#51] at 44–45. But T.W. does not explain what requirements LISD failed to meet or how LISD failed to meet them. *See id.* at 44–45. Nor has T.W. pointed to any legal authority suggesting LISD was required to periodically reevaluate T.W. *See id.* Although T.W. cites 34 C.F.R. § 104.35(d) for the proposition that school districts must "establish procedures" for periodic reevaluation procedures, that provision does not address the circumstances under which school districts are required to conduct such evaluations. And § 104.35(a) suggests school districts need only conduct such reevaluations before initiating "any subsequent significant change in placement." *Id.* § 104.35(a). T.W. has not argued such a change occurred here.

Second, T.W. argues LISD intentionally discriminated against T.W. by failing to "recognize his problems" and provide him with appropriate services for his dyslexia. *Id.* at 56–40. Yet T.W. has not pointed to any evidence suggesting LISD demonstrated professional bad faith or gross misjudgment in calibrating the accommodations provided to T.W under § 504. *See* Pl.'s Mot. J. Admin. R. [#51] at 45–52.[5] Even more to the point, the Court has already concluded T.W. did not need special education under the IDEA, *see supra* Section II.A, and given this conclusion, it is particularly unlikely LISD grossly deviated from "accepted standards among educational professionals" in handling T.W.'s § 504 plan. *D.A.*, 629 F.3d at 455; *see also id.* at 454 ("[T]he resolution of an IDEA claim in the school district's favor will frequently preclude parents' resort to redundant claims under § 504 and [the] ADA.").

---

[5] In fact, T.W.'s briefing appears to acknowledge that LISD did not act in bad faith but simply "misjudged the extent of [T.W.'s] problems." *Id.* at 48.

The Court concludes T.W. has failed to point to evidence creating a genuine issue of material fact as to whether LISD intentionally discriminated against T.W. when creating and administering T.W.'s § 504 plan.

The Court therefore grants summary judgment in favor of LISD on T.W.'s § 504 and ADA claims.

## Conclusion

The Court concludes T.W. has not shown he qualifies as a "child with a disability" entitled to special education under the IDEA and therefore grants summary judgment in favor of LISD on all of T.W.'s IDEA claims. Further, the Court grants summary judgment in favor of LISD on T.W.'s § 504 and ADA claims on the ground that T.W. has not pointed to evidence suggesting LISD intentionally discriminated against T.W.

Accordingly,

IT IS ORDERED that T.W.'s Motion for Leave to File Surreply [#74] is GRANTED;

IT IS FURTHER ORDERED that T.W.'s Motion for Judgment on the Administrative Record [#51] is DENIED, and LISD's Motion for Judgment on the Administrative Record [#62] is GRANTED;

IT IS FURTHER ORDERED that T.W.'s Motion for Leave to Seal [#56] is GRANTED;

IT IS FURTHER ORDERED that T.W.'s Motion for Leave to Request Extended Time to File Affidavits [#50], Motion to Extend Time to Supplement the Administrative Record [#70], Motion to Strike Unauthorized Surreply [#75], Motion to Authenticate

Documents [#76], Motion for Leave to Correct Title [#77] and Motion to Strike Response to Supplemental Authority [#81] are DISMISSED AS MOOT; and

IT IS FINALLY ORDERED that LISD's Original Motion for Judgment on the Pleadings [#60] is DISMISSED AS MOOT.

SIGNED this the 7th day of March 2019.

/s/ Sam Sparks
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE